**Affirmed and Memorandum Opinion filed July 31, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-01106-CR

---

**DOUGLAS WAYNE RING, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 23rd District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 64814**

---

## M E M O R A N D U M   O P I N I O N

Appellant Douglas Wayne Ring appeals his conviction for sexual assault. In a single issue, appellant argues the evidence is insufficient to show the complainant did not consent after she became an adult. We affirm.

### BACKGROUND

A jury found appellant guilty of sexual assault of a child and sexual assault. The record reflects that appellant sexually assaulted C.R., his biological daughter,

repeatedly over the course of approximately 12 years. Appellant was indicted for two counts of sexual assault of a child and three counts of sexual assault. Appellant does not challenge his conviction for sexual assault of a child.

C.R. testified that her father began sexually abusing her at the age of eight. He repeatedly abused her throughout her grade school years. When C.R. was in the fifth grade, appellant took away her toys and deprived her of sleep until she submitted to sexual intercourse. When C.R. fell asleep, appellant would wake her and continue to wake her "until [she] finally said yes to get it over with so [she] could go to sleep." Appellant would not allow C.R. to play outside until she submitted to sexual intercourse. C.R. testified that when she was in the fifth grade, appellant would suck C.R.'s breasts ignoring C.R.'s statements that appellant's actions hurt her.

C.R. testified that when she was in the sixth grade she and her father engaged in a routine of intercourse after school. At a middle school lecture about sexual education, C.R. learned that her father's behavior was inappropriate. After that time, C.R. testified she became "emotionally numb." During this time, appellant continued to coerce sex from C.R. by limiting her visits to her maternal grandmother. C.R. testified that she was permitted to visit her grandmother only after he had "ejaculate[d] in [her] 10 times."

When C.R. entered high school, appellant entered into "stipulations" with C.R. in which he would pretend to agree to stop intercourse after a "set amount of time frame if [she] did certain things his way." C.R. described the "certain things" as kissing appellant and moving "in sync with him." C.R. testified that she did not want to participate in intercourse with her father, but when he forced her to have intercourse, she would sometimes remove her own clothing to deprive him of the pleasure of doing so. In high school, appellant began to demand oral sex and

2

performed oral sex on C.R. even though she asked him to stop.

C.R. repeatedly asked appellant to stop abusing her; appellant refused to stop abusing her, but entered into "stipulations" as described above. C.R. attempted to report the abuse to her mother, but when appellant learned of her attempt he "threw [her] down on the bed and started choking [her]." C.R. described one incident in which her mother discovered appellant abusing C.R.; C.R.'s mother "pulled [appellant] off of [C.R.] and told him that there was a better way to discipline [C.R.] and if he wanted to discipline [C.R.] to use the belt." According to C.R.'s testimony, appellant threatened to kill her multiple times.

After C.R. graduated from high school and was over 17 years old, she enlisted in the United States Air Force and attended basic training in San Antonio. After approximately one month in basic training, in August, 2000, C.R. returned home because she was afraid of what appellant might do to her two younger sisters. In January, 2001, C.R. discovered she was pregnant with appellant's child for the second time.[1] That pregnancy resulted in a miscarriage approximately two months later. C.R. testified that after the miscarriage, appellant was still forcing her to have sex with him.

Sometime after C.R. had returned home appellant gave her a CD he had made containing a video of the two of them engaging in sexual intercourse. Appellant told C.R. that if she "said anything to anyone about what had happened, that he would send that to everyone that [C.R.] knew and they would never speak to [her] again." When asked at trial whether she wanted to engage in sexual intercourse with her father after she turned 18, C.R. answered, "No."

In 2003, C.R. became pregnant with her father's third child. The pregnancy

_____

[1] C.R. first became pregnant with her father's child while in high school. C.R. testified that her father took her to a clinic in Houston where she had an abortion.

3

was carried to term. In 2005, C.R. confronted appellant and reported the abuse to authorities.

A DNA expert testified that there is a 99.99 percent chance that appellant is the father of C.R.'s child. The expert also tested the fetal material from the 2001 miscarriage, and testified that there is a 99.4 percent chance that appellant was the father.

After his arrest, appellant gave a video-taped statement to police, which was played in its entirety for the jury. In the statement appellant denied the allegations made by C.R.

Appellant presented the testimony of C.R., C.R.'s mother, and C.R.'s sisters. C.R. admitted to using cocaine and marijuana from 2005 to 2007. C.R.'s mother and her sisters testified that, despite DNA evidence that appellant fathered at least two children by C.R., they did not believe C.R.'s allegations because C.R. had a history of lying, drug use, and sexual promiscuity.

The jury found appellant guilty of one count of sexual assault of a child and three counts of sexual assault, and assessed punishment at 20 years for the sexual assault of a child count and 10 years for sexual assault. The trial court denied the State's motion to cumulate the sentences and ordered appellant's sentences to run concurrently.

## ANALYSIS

In a single issue appellant challenges the sufficiency of the evidence to support his conviction for sexual assault. On appeal, appellant does not challenge his conviction for sexual assault of a child, nor does he challenge the evidence that sexual intercourse occurred. Appellant argues that the evidence is insufficient to support a finding that C.R. did not consent to intercourse after she became an adult.

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether a rational jury could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). In making this review, an appellate court considers all evidence in the record, whether it was admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013).

We may not substitute our judgment for that of the jury by reevaluating the weight and credibility of the evidence. *Romero v. State*, 406 S.W.3d 695, 697 (Tex. App.—Houston [14th Dist.] 2013, pet. stricken). We defer to the jury's responsibility to resolve any conflicts in the evidence fairly, weigh the evidence, and draw reasonable inferences. *Id*. The jury alone decides whether to believe eyewitness testimony, and it resolves any conflicts in the evidence. *Id*. In conducting a sufficiency review, we do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

As a predicate to our consideration of appellant's sufficiency issue, it is necessary to discuss the language of the amended indictment. Each of the three counts alleging sexual assault allege that appellant "did then and there intentionally or knowingly cause the penetration of the female sexual organ of [C.R.], by defendant's sexual organ, without the consent of [C.R.]" None of the counts specified a manner in which the State alleged appellant's sexual assault of C.R. was without her consent.

A person commits sexual assault if he intentionally or knowingly causes the

penetration of the anus or sexual organ of another person by any means, without that person's consent. Tex. Penal Code § 22.011(a)(1)(A). Section 22.011 lists eleven circumstances which define "without consent." *Id*. § 22.011(b)(1)–(11). In this case, the jury was instructed that, "A sexual assault is without the consent of the person if [t]he other person has not consented and the actor knows the other person is unconscious or physically unable to resist[.]" *See* Tex. Penal Code § 22.011(b)(3).

Although previously we measured evidentiary sufficiency against allegations in the application paragraph of the charge as submitted, we now look to the "hypothetically correct jury charge" to identify the essential elements for measuring sufficiency. *Gollihar v. State*, 46 S.W.3d 243, 252 (Tex. Crim. App. 2001). The hypothetically correct jury charge "accurately sets out the law, is authorized by the [charging instrument], does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was on trial." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Our reliance on the hypothetically correct jury charge "ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted." *Id*.

The State generally is not obliged to plead one specific means of committing an offense. *See Geick v. State*, 349 S.W.3d 542, 547 (Tex. Crim. App. 2011). If the State elects to allege only certain of the available statutory alternatives for committing the charged offense, however, the State must prove the offense by one of the chosen methods alleged in the charging instrument. *Id*.; *see also Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

The hypothetically correct jury charge standard therefore requires sufficient

evidence that the offense was committed in a manner that does not materially vary from the allegations in the charging instrument. *Gollihar*, 46 S.W.3d at 246–47. Descriptions of the offense that are not derived from the language of the authorizing statute need not be incorporated into the hypothetically correct jury charge unless omitting them would affect the "allowable unit of prosecution." *Johnson v. State*, 364 S.W.3d 292, 297–98 (Tex. Crim. App. 2012). Such non-statutory "variances" are considered immaterial to the sufficiency of the evidence. *Id*. at 295.

On appeal, appellant challenges the sufficiency of the evidence to support a finding that the sexual assault was without consent because appellant knew C.R. was "unconscious or physically unable to resist." In *Fongang v. State*, No. 07-11-00358-CR; 2013 WL 5460002 (Tex. App.—Amarillo Sept. 30, 2013, pet. ref'd) (mem. op. not released for publication), the Amarillo Court of Appeals held that the hypothetically correct jury charge, against which we must measure the sufficiency of the evidence, would not have been so limited. *Id.* at *4.

Relying on the Court of Criminal Appeals' analysis in *Geick v. State*, 349 S.W.3d 542, 545 (Tex. Crim. App. 2011), the Amarillo Court held that absent a "notice-based motion to quash," the State was not required to allege in the indictment the specific manner in which the sexual assault was without consent. *Fongang*, 2013 WL 5460002 at *2. The court determined that a hypothetically correct jury charge would have authorized conviction if the jury found the sexual assault was without the complainant's consent for any of the statutory reasons supported by the evidence. *Id.* at *4.

In *Geick*, the Court of Criminal Appeals analyzed provisions of the Penal Code concerning theft, sections 31.01 and 31.03. 349 S.W.3d at 546. The court noted the statutes contain three ways in which an appropriation of property may be

unlawful, one of which is that "it is without the effective consent of the owner." *Id.* at 546. The court further noted that the statutes list five ways in which consent is not effective. The theft indictment in *Geick* specified one of the five circumstances that make consent ineffective, that of consent induced by deception. *Id.* Considering the effect of that specific statutory allegation on the hypothetically correct jury charge against which the sufficiency of evidence would be judged, the court followed its analysis in *Cada v. State*, 334 S.W.3d 766 (Tex. Crim. App. 2011), in holding that the indictment's narrow allegation that the appropriation was without consent because of deception required the State to prove that specific allegation. The court made clear, however, that absent a "notice-based motion to quash," the State was not required to allege the manner in which consent to appropriation of property was ineffective. *Id.* at 547.

Like the theft statutes, the sexual assault statute lists several circumstances under which a sexual assault is without consent. Tex. Penal Code § 22.011(b). The Texas Penal Code states that a sexual assault is without the consent of another person if:

> (1) the actor compels the other person to submit or participate by the use of physical force or violence;
>
> (2) the actor compels the other person to submit or participate by threatening to use force or violence against the other person, and the other person believes that the actor has the present ability to execute the threat;
>
> (3) the other person has not consented and the actor knows the other person is unconscious or physically unable to resist;
>
> (4) the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it;
>
> (5) the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring;

8

(6) the actor has intentionally impaired the other person's power to appraise or control the other person's conduct by administering any substance without the other person's knowledge;

(7) the actor compels the other person to submit or participate by threatening to use force or violence against any person, and the other person believes that the actor has the ability to execute the threat;

(8) the actor is a public servant who coerces the other person to submit or participate;

(9) the actor is a mental health services provider or a health care services provider who causes the other person, who is a patient or former patient of the actor, to submit or participate by exploiting the other person's emotional dependency on the actor;

(10) the actor is a clergyman who causes the other person to submit or participate by exploiting the other person's emotional dependency on the clergyman in the clergyman's professional character as spiritual adviser; or

(11) the actor is an employee of a facility where the other person is a resident, unless the employee and resident are formally or informally married to each other under Chapter 2, Family Code.

Tex. Penal Code §22.011(b).

In *Fongang*, the Amarillo Court of Appeals determined that the manner in which the sexual assault is without the complainant's consent is not an element of the offense required to be included in the indictment. *Fongang*, 2013 WL 5460002 at *2. We agree with the Amarillo court's analysis, and hold that in this case, given the absence of a "notice-based motion to quash," the State was not required to allege in the indictment the specific manner in which appellant's sexual assault of C.R. was without her consent. Therefore, a hypothetically correct jury charge would have authorized conviction if the jury found the sexual assault was without the complainant's consent for any of the statutory reasons supported by the evidence.

Appellant argues that after C.R. returned home from basic training, "[t]he

9

evidence does not support the actions of an adult attempting to flee unwanted sexual and threatening behavior from another adult." Appellant admits that C.R. testified that she did not want to engage in sexual intercourse, but argues that she did not communicate her resistance to appellant. Appellant argues C.R. did not testify she "was under duress by a force or threat, nor is there evidence she was incapacitated." Appellant further argues there is no evidence that C.R. "informed appellant she did not consent to sexual intercourse or was under duress to engage in sexual intercourse."

Explicit verbal threats and physical injury are not necessary to prove a defendant compelled a victim's participation. *Edwards v. State*, 97 S.W.3d 279, 291 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). The fact finder considers the totality of the factual circumstances in determining whether the victim consented. *Brown v. State*, 576 S.W.2d 820, 823 (Tex. Crim. App. 1978); *see also Graves v. State*, 994 S.W.2d 238, 243–44 (Tex. App.—Corpus Christi 1999, pet. ref'd) (finding evidence of implicit threat of force when defendant threatened to beat victim as he had done on at least one prior occasion); *Smith v. State*, 719 S.W.2d 402, 403 (Tex. App.—Houston [1st Dist.] 1986, no pet.) (finding evidence of physical force and violence where victim passively accepted sexual intercourse because she had been forced to submit to sexual demands by being beaten most of her life); *Vasquez v. State*, No. 07-01-00232-CR; 2002 WL 737369 at *2–3 (Tex. App.—Amarillo Apr. 26, 2002, pet. ref'd) (evidence that showed appellant's repeated sexual assault for nine years in which appellant told victim if she told anyone he would hurt her mother and that "things would be worse," and he had previously slapped victim, pulled her hair, and threatened to throw her from a car was sufficient to show lack of consent).

The testimony of a victim, standing alone, is sufficient to support a

conviction for sexual assault. *Villalon v. State*, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990); *Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). Moreover, the jury is the sole judge of the credibility of the witnesses at trial. *Johnson v. State*, 23 S.W.3d 1, 6 (Tex. Crim. App. 2000*); see Hernandez v. State*, 804 S.W.2d 168, 170 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) (stating "the jury had the ability to observe the witnesses carefully, to hear the fear or violence projected from each witness, and to evaluate the credibility of each witness and the overall sufficiency of the evidence on the issue of consent").

In this case, the jury heard testimony that C.R. had been subjected to repeated sexual abuse by her father for 12 years. When asked specifically whether she consented to sexual intercourse with her father after she turned 17, C.R. responded that she did not. C.R. also testified that after she turned 17:

- Appellant choked her when she threatened to report the abuse to her mother;

- Appellant used a video of the two of them engaging in intercourse to coerce her into continuing to engage in intercourse;

- Appellant bargained with C.R. stating he would stop the abuse if she would engage in certain acts with him; and

- Appellant threatened to kill her if she did not engage in sex with him.

Based on this evidence, a rational jury could have concluded that appellant compelled C.R.'s submission or participation by threatening to use force or violence *See* Tex. Penal Code § 22.011(b)(2).

Appellant argues that C.R.'s admissions that while in middle school before she knew it was inappropriate to have sexual intercourse with her father she would

go to him to engage in intercourse, and that while in high school she undressed herself, support his contention that he did not have notice of her lack of consent. However, lack of consent is not an element of the offenses that occurred prior to C.R. turning 17. *See* Tex. Penal Code § 22.011(a)(2).

Viewing the evidence in the light most favorable to the verdict and resolving all conflicts in the same light, the jury rationally could have concluded C.R. was compelled to submit to, or participate in, sexual intercourse with appellant after she turned 17 by his threats to use force or violence against her and her belief that he had the present ability to execute those threats. We overrule appellant's sole issue and affirm the trial court's judgment.

/s/     Ken Wise
        Justice

Panel consists of Justices Boyce, Busby, and Wise.

Do Not Publish — TEX. R. APP. P. 47.2(b).

12